and appellant's counsel is Richard Smith. Thank you, Your Honor. Mr. Smith, please proceed when you'd like. Your Honor, counsel, on January 20th of 2004, Agent Sarah Bay signed an affidavit, submitted an affidavit, in which she said that in September she had received information from an ICAC task force, that they had received information from the ICAC. And in the National Center for Missing and Exploited Children, cyber chip line reports, regarding an individual who had uploaded child pornography, and based upon the information provided in the cyber chip line reports, that Jackie Rabbit was the screen name of the person. I think initially our argument is that's like somebody saying that law enforcement received information about a burglary, and they don't know when or where it occurred, or even if it occurred. And they received information that this individual was the person that did it, and based on that, they go out and search that individual's home, because there was nothing more here. There was nothing that – there was no independent corroboration of that information. And we know that this individual was the one that did it. There was no direct information from the report. I'm confused. There was a report to this association by Yahoo. But then, as I understand it, the case agent did get direct information from Yahoo. The case agent got direct information from Yahoo that I think that there was an IP address associated with Jackie Rabbit. And that there was another e-mail address that was reported. There was – well, that information aside, they had to try to make the connection between the Jackie Rabbit screen name and the – And the way they made it was that Yahoo reported that that was reported as an alternate e-mail address for the person who was Jackie Rabbit. I don't know. Frankly, Your Honor, I'm not sure that Yahoo reported that, but that – as an alternate screen name. Well, that information then was to determine whether or not that screen name was even – or the alternate e-mail address was valid. But I think that's the – It was valid, and it had a person attached to it, and this was the person attached to it. And so I'm really having trouble understanding what – you began by telling us about one-fifth of the story, but once you get to the alternate e-mail address, what's the problem? Well, here's the problem. I guess if you get there – number one, if you agree that this information simply is provided and that there doesn't have to be any independent corroboration of it, other than she says, okay, we found that there was a person by the name of Jackie Rabbit, but as far as who did what, there's no information that Jackie Rabbit, other than that was the name that was identified in the NCMEC reports, there's no information that's determined as far as what Jackie Rabbit did, when an upload occurred, whether it was by Jackie Rabbit at all. All she's corroborating is that there is a person by the name of Jackie Rabbit. And that – maybe I'm misunderstanding, or maybe I don't understand the technology, but I thought that it was that this person – that the computer documents, at least, would show that this person, Jackie Rabbit, uploaded certain images onto the Internet.   But the report doesn't say that this person is from Yahoo, a certain Yahoo site. No. That was simply a report. That was information that's reported, but it's – but it doesn't – the affidavit doesn't say that that's reported by Yahoo. It simply says that based on information we received in a report, in the NCMEC report, that's not what the affidavit says. It's what the report says, though, the NCMEC report. I don't – in fact, Your Honor, I'm not sure that that's the case. What they say is that we had received information, Yahoo reported these incidents, that there was a group and that there was child pornography on a group. That's what was reported by Yahoo. So the affidavit says that Yahoo has reported an upload of pornography. Is that right? The only thing that it says – I'm reading from it. The cyber chip line reports that they received information from NCMEC regarding an individual who had uploaded multiple images of child pornography onto a Yahoo group. So they say they've received a report from this organization. NCMEC. That Yahoo – that this user uploaded pornography on a Yahoo site. Well – Well, is that right or wrong? I think it's wrong. Whether that's enough – okay, well, what – then you state it more precisely. The affidavit says – The affidavit says – That they get a report from the association. That the association – that they get a report from ICAC that ICAC had received information from NCMEC and based on that – That NCMEC – that Yahoo had somebody upload pornography on a Yahoo site. That's what the report is. It may be triple hearsay. Right. But that's the substance of it. That's it. Right. Okay, so now the legal standard that we have to address – Is whether – Is the Supreme Court's standard of whether the affidavit shows a fair probability that evidence of a crime will be found at the location. Exactly. Right. And the – ultimately, the issue is, does – I mean, if you even make that connection, can you make the connection to the residents at 110 Kinney Lane in Selah, Washington? And even the agent says, on examination, I asked her, was there – did you have any evidence that the Jackie Rabbit screen name was accessed from 110 Kinney Lane? Her answer to that was no. Do you have – I said to her, you have no evidence that a computer that accessed the screen name Jackie Rabbit was located at 110 Kinney Lane? No. Well, I don't think they'd have to show any evidence – why would they have to show evidence that the Jackie Rabbit name was used at that address? Because I thought the whole point was that the person using the name Jackie Rabbit gave the Welcome to My World address as an alternate e-mail address. And it was that alternate e-mail address that was associated with the residents that were searched. I think that's – Is that right? That is correct. So I don't see the relevance of the fact that the officer says, I don't have evidence that anyone at that address used the Jackie Rabbit name directly. Well, it seemed to me that in reading Hayes and in reading Lacey, that there had to be a connection between the residents searched, or at least to determine that there was a computer there that did – that accessed or had access to the upload or the download. And that didn't seem to be present in this case at all. In fact, the only connection records that she says – she says that I obtained connection records for this account, this alternate e-mail account, but all those connection records were outside the time period that there's any evidence that this upload occurred. Well, she wouldn't necessarily have to have evidence that the alternate – at least it seems to me – it wouldn't be required to show evidence that at the alternate e-mail account there was pornography on that account or uploads of pornography on the MSN account, but all that you have to show a fair probability that the person who has that other account was the person who uploaded pornography on the Yahoo account. It kind of turns – seems to turn on the relevance of the use of the giving of the alternate address at Yahoo. If that's the case – and I think that there's several leaps that you have to go through or several – I guess it is a leap to get to that point. The only thing that Agent Bay says about that connection is that based upon her experience, it's usually a fair address or it's usually an accurate e-mail address if there's an alternate e-mail address given. But if the court reviews – it could be phony. It could be. But is there a fair probability that it – that the person who had the Yahoo account who gave the alternate address was giving a true alternate address? Well, she says that it's based upon the consistency of the information given. Not whether or not – because there's no question that an alternate e-mail account existed and it was registered to 110 Kinney Lane. I think that everything in the affidavit establishes that Paul Evans lives at 110 Kinney Lane. But I don't know how you get to that. And that he's associated with this welcome to my world e-mail address. Pardon me? And that he's associated with the welcome to my world e-mail address. Correct. And that the person who's associated with the welcome to my mail e-mail address is – at least was reported to be associated with the Jack and Rabbit person. It seems to me your best argument actually is the one that you mentioned just before, which is that all of that doesn't lead to the conclusion that there was a computer at that place that had – had pornography on it. But the rest of it seems like a completely direct trail. In other words, it's a trail to him. I don't know that it's a trail to a computer at that spot. Correct. I mean, I don't think that ultimately it gets to whether there's a computer at that spot or that there's a computer – that you're going to have a reasonable probability you're going to find pornography in that home. But what Agent Bay says in her affidavit is that the only way you can determine whether or not you make the link between Jackie Rabbit and welcome to my world is whether the information is consistent. And as we indicated, the only – But Judge Gold says if – I mean, your argument is troubling me because you're – it seems to me that you're denying the links that are there instead of concentrating on the ones that are not. The – it's – Yahoo says that the alternate email address was this one. I mean, yes, it's possible that that wasn't the same person. Somebody was lying. But the probability is it is. Just an ordinary – quite aside from what her experience is. Ordinarily when somebody says – sends something in and says, this is me, one can assume it's him. I don't – I don't disagree that the alternate email account or address is – has every indicia of accuracy. Okay. And that is traceable directly to Mr. Evans. So, therefore, there is a trail from Jackie Rabbit to Mr. Evans. And the only question is whether there is a trail from Jackie Rabbit to a computer at Mr. Evans' house. Well, I do. I agree with that. And whether or not – even if there was that trail, whether that information is stale based upon how it was obtained. That's your second reasonable argument. But you're throwing it at a very strange place. The staleness seems to me to be perhaps the thing we should spend most of our time on. Here's what I – here's what I think. Number one, as far as the staleness argument is concerned, there's no information – there's no way that the – that the court could determine, we find out later on, that the account that they say he was in had been deactivated, could have been deactivated as of the date that it was – that it was started, which is August 6th of 2000. And you don't think there's a fair inference from the fact that the incident date here is said to be 982003 and that the access date is said to be 982003 and that then there's a glossary that says that the access date is the date that Yahoo archived material for reporting to NC – NEC, which seems – means to me that it was still on the system at that time. It's an indication that on 98203, this material was still on the system. I – I don't. In fact, I think that's the problem with the affidavit, is that it doesn't – I'm not reading from the affidavit. I'm reading from the cyber chip line report. That it says – that it says that – see, but that – that isn't explained in the affidavit. I mean, I think you're limited to the four corners of the affidavit. And if you say – Wasn't this attached to the affidavit? No. No. It was not? No. It was – it was submitted by – by us to show that the information submitted to NCMEC isn't – it doesn't investigate itself. It doesn't vouch for the accuracy or the correctness of any of the information. Okay. Well, we're almost four minutes over your time. I – I apologize. But if any – if judges have any further questions, we'll let you go along. Okay. Well, we'll give you one minute for rebuttal, so you can speak for your client if you need it. Ms. Bolton. Good morning. I want to hear the government's view on these issues, too. Yes. And I'd be happy to share those, Your Honor. It seems to me that this Court's focus is the issue of probable cause. And I'm a little disappointed that the defendant didn't have to answer at all to the issue of the appeal of his sentence, which I just want to get out there. For the record, he waived pursuant to his plea agreement. The law has not changed in light of Booker that if you negotiate a plea agreement and you agree and get certain considerations from the government in exchange for that plea agreement, you have waived that appellate right. He agreed not to waive his sentence or not to appeal his sentence if he got no more than 70 months. He was sentenced to 70 months, and hopefully the reason that didn't come up is that it's a settled issue. But I want to make that clear for the record, that the government gets the benefit of its bargain and the sentence should not be reviewed. And that's just the way it is. It's covered then, such as R.E.S. Yes. I think so, too, Your Honor. On the issue of the motion to suppress and the probable cause for the search warrant, there are ample facts the government submits to support the connection. There's a couple things that came up that I'd like to address in the defendant's argument. Evidence that the computer was at that spot, the 110 Kinney Lane address. There is evidence of that in the affidavit. And if we read the affidavit, the agent, Agent Bay in this case, with Customs Enforcement, indicated that the alternate, again, it goes to the connection of the alternate e-mail address, but she references that when she got the records from MSN concerning this alternate e-mail address and the subscriber information, then, in fact, the telephone number that she confirmed was the defendant's true telephone number in C.L. Washington. But that really isn't a link to that. That, again, is a link to Mr. Evans. And it seems to me the link to Mr. Evans is very clear or certainly sufficiently clear to establish probable cause. But the question is, why, what indication there is that the person using Jackie Rapid at Yahoo.com, and let's say that is Mr. Evans, was using the same computer that was associated with Welcome to My World? I mean, I gather that there is some – with regard to Welcome to My World, is there any direct evidence as to location of a computer? Yes. The telephone number, what the agent confirmed and put in her affidavit was that the telephone number. Of the person. It's not a computer. It was a dial-up telephone or a dial-up internet. Okay. That's right. Okay. So he used that telephone number that's associated with that 110 Penny Lane address to actually access. But sometime later, actually. Access the internet. But the timing was not exactly. And as I recall, there was one usage, but for the most part, it was after this time. Well, she did the follow-up confirmation. That's right. And she connected that MSN account to that residence specifically. Well, we still don't have, though, any reason to think that the computer that was used for the pornography was that computer. Well, and it's always going to come down to this, I think, in these kinds of cases. The agent can't be there and see the actual uploading. That just doesn't happen. I mean, perhaps in a very complicated case where there's. But you may be able to trace the IP number, and here you didn't. Well, it depends on the IP method. There's the static method, and then there's another one, which I'm not thinking of. But, and it's a complicated computer system where it changes. Each time you dial up, there's a new IP address. What they can do is they can take a snapshot, and they can say, okay, this particular IP address that was used on this date resolves to a particular area or location, region. And that's what they did here. That's what she did here. She said it resolves to this Yakima, Washington area, which is where the defendant was. The Jackie Rabbit one did. Right. But they could not trace it directly to a particular computer on a particular date. That's just not feasible. So what it comes down to is compiling all the different pieces of evidence that link the defendant to this Jackie Rabbit user. The only information that there was was that the defendant was associated with this Jackie Rabbit user account. There was no evidence that anyone else was associated with it. Because he provided this alternate e-mail address. And that's really the link. That's what it comes down to. And what the agent indicated. But he could have been doing all of his uploading and downloading out of his office computer, for example, assuming he had an office computer, as far as the information showed. True. And he could have provided. That's a possibility. But there's no evidence that he had any other, any other computers. And he, in fact, and I'm not sure if this is in the affidavit, so I don't, we're obviously confined to the affidavit facts. But what it comes down to is that the provision of this alternate e-mail address by the user Jackie Rabbit, in the agent's experience, and she'd investigated several of these types of cases, never had she ever seen someone provide an alternate e-mail address that was a genuine alternate e-mail address, not a fake address that didn't exist, but a genuine alternate e-mail address that did not, in fact, belong to that person. There, so, and she put that in her affidavit. She explained that to the magistrate. Also, a date of birth was put onto that application, that user information, 1953, which is the year that the defendant was born. And she confirmed that. There's no problem connecting him, the person. My question is, how do you connect him to the computer? Well, you. Or a computer at his desk. To not make the connection, I guess what you'd have to do is assume that somebody knew all of the defendant's personal information. And somebody was out. All you have to assume is that he was using a different computer as far as his house. Well, there was no evidence that he had access to any other computer. The only information that the agent had and the agent could find was this connection that, in fact, she made, which is a dial-up connection from his home address to that same alternate e-mail address that he provided. What about the staleness issue? Could you address that quickly? The staleness issue? I mean, what the staleness issue? I mean, these two things are obviously linked, because the question of could I get connection to a particular computer and also that if you find that computer, you're going to find these pornography on it. Right. The NICMEC report was generated at the time of the Yahoo report. When Yahoo finds the information on the Internet, when some kind of transmittal of child pornography occurs, which they can identify through what they call hash numbers that are associated with those images, they make a report to NICMEC. That report happened in September of 2003. NICMEC transmits it to law enforcement. That happened in September of 2003. The affidavit was submitted in January of 2004. So we're talking about a period of four to five months. And you think it's a fair inference that the material was on the computer in September. It may be. Again, and it comes down to the nature of the crime. What kind of information are we talking about or contraband are we talking about? We're talking about the prized possession of child pornographers. People who are interested in child pornography do not dispose of it readily. No, that's a different issue. I'm asking you, how do we know that it was on the computer in September of 2003? Oh, the time of the report? Well, again, I think that comes to the Yahoo report. When Yahoo receives the information that this, these images were uploaded to the group, which is on or about September 2003, we don't know the exact date that it was uploaded. We know that the report was generated at or near the time that it was discovered. So it's a reasonable inference. Again, that's what the magistrate has to draw from the search warrant affidavit, that on or around September of 2003 is when this upload occurred. But really, I mean, to me that's sort of a racist point because if you actually look at the NCMEC report, it's not a bad inference. But if you look at what was in the affidavit, all she says is September 2003, I received information that, about this. And it says Yahoo reported these incidents to NCMEC in September 2003, but there's no background to suggest that it happened in September 2003. Well, it's true. The affidavit doesn't say this date this upload occurred. What happens is Yahoo intercepts it through this identifying of these hash numbers, as the agent explained, I believe, in her, at the Franks hearing. She didn't put that in her affidavit, but she explained that. So as soon as those are intercepted, they make this report to NCMEC. There's no reason to believe, there's no evidence to suggest that there's some substantial belay in that report. So, again, it comes down to what is a reasonable inference of that information in that affidavit. So the question under the Supreme Court standard, whether there's a fair probability that these connections hold up, I guess. Right. And not a definite certainty, but a fair probability. So that's the Gates test, as I understand it. Right. And I think when this Court has, as this Court previously has said in the Hay and Lacy cases, the 2000 Hay case and the 97 Lacy case, the nature of the crime, I think in one of those cases, it was a period of almost ten months, but certainly four to five months, or if you even assume and make that leap against the reasonable inference, that it took some longer period of time for that report to occur. It's reasonable, given the nature of the crime, that this material would be maintained in the possession of the child pornographer. Okay. Well, we have another child pornography case, the Gordy case that's pending in bank, which may shed some light on the standard. But that one's not out yet, so that isn't going to assist us today. And that case was cited in this case. Now, the Franks hearing issue, could you just we went over time on the appellant and we're going to give the appellant another minute or two to reply. Just could you address that briefly? I will. First, the defendant requested the Franks hearing, not the government, obviously. And the hearing was held over the government's objection. We felt that they hadn't met their standard to actually hold the Franks hearing and proceed on the examination of the affiant. But it was held nonetheless. And the issue before the court at that Franks hearing was whether or not there was deliberate falsehood or reckless disregard for the truth with regard to that Jackie Rabbit to the defendant connection. I was a little confused about why there was a Franks hearing at all. It didn't seem there was really any allegation of falsehood. There was an allegation of an adequate probable cause, but not really a falsehood. I'm not sure what the behavior needed to be at Franks hearing. Right. I wasn't sure either. It seemed like the allegation was there were omissions. The things omitted that would have shown probable cause that weren't there were sort of fraudulently omitted. Right. And I think there was the contention that there were certain things not disclosed, such as the absence of information in the subsequent Yahoo report because it had been shut down. Didn't disclose what you didn't know. Right. But because there was some significance attached by the defendant to these issues which we submitted were not issues, were not really that crucial. Okay. We're over time unless the judge has other questions.  Thank you. Thank you. I appreciate the ---- How is the evidence here different in connecting to the computer in question from the evidence in Lacey? In Lacey, I think there was significant connection. They had the defendant had direct contact with BAMSI, which was the source of the pornography, and they linked the caller's phone number matched BAMSI's record saying this was downloaded on this day and the caller's phone records showed that the calls were made to BAMSI on that day from that day. Weren't those telephone calls or am I confused about that? Well, what I thought it was, it was the telephone call to BAMSI and the download was made on those days. So I'm thinking that there was a direct ---- that it was like either a dial-up connection or there was a direct connection between the computer and the download to pornography on that computer, which was located at, I think they said it was a computer analyst's apartment that they identified. In this case, that is significant here because when counsel says that it wasn't feasible for them to make that connection, they didn't, you know, I mean, in Hay, what they did was they called and, you know, did an undercover call to determine that the person had a computer. They determined that he had an interest in child pornography. When counsel says that because of this, the contraband, because of the fact that it's child pornography that we're talking about here, that they should get the benefit of the staleness argument, the fact is, is that there's nothing to show that Mr. Evans has any interest in child pornography, has any history of child pornography, or that he's a person who would keep this stuff on his computer if we found that there was a computer located at that address. So I don't think that the government gets the benefit of saying, look, if you just say this was reported on such and such a day, we have this information, and you have absolutely no information as to when it occurred. You're not saying when this incident occurred. Why is it a reasonable inference that it occurred at that time in September unless the Court were to have at least that fleshed out in the affidavit? What we look at to corroborate information is how was it received, the manner in which it was obtained. There's nothing in this affidavit to show that, the manner in which the information is obtained. We're just saying, well, it came to us through this way, and I don't think that that's sufficient to say, okay, we're going to rely on it. Finally, there isn't anything as far as the phone number. The Court is right. Nothing in the affidavit indicates that this was a dial-up connection. There's nothing to say that it was. It just was or it wasn't. Mr. Smith, we're over. I appreciate it. Thank you. We appreciate your argument of both parties, and we appreciate your travel to Seattle to illuminate us. So have safe trips home.
judges: Gould, Berzon, Schwarzer